**SO ORDERED.**
**SIGNED this 10 day of July, 2017.**

_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| STELMA PROPERTIES, LLC | 16-00344-5-JNC |
| | CHAPTER 11 |
| DEBTOR | |

### ORDER DISALLOWING APPLICATION FOR COMPENSATION

The matter before the court is the Application for Compensation filed by Branch Banking & Trust Company ("BB&T") on March 30, 2017 (D.E. 206; the "Application"). An objection to the Application was filed by the Debtor on April 19, 2017 (D.E. 213; the "Objection"). A hearing was held in Greenville, North Carolina on June 15, 2017, at the end of which the court disallowed the Application as a claim against the Debtor. This order serves to explain the court's rationale in arriving at its decision.

### JURISDICTION

This matter is a core proceeding pursuant to 28 U.S.C. § 157, and this court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334 as it pertains to postpetition sales proceeds, which are an asset of the bankruptcy estate pursuant to 11 U.S.C. § 541. This court has the authority to

hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## BACKGROUND

Stelma Properties, LLC (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on January 22, 2016. The Debtor owns and operates two fitness centers, one of which is in Jacksonville, North Carolina (the "Jacksonville Property") and the other in New Bern, North Carolina (the "New Bern Property"). At the time of the petition filing, BB&T held three claims totaling more than $3,050,000, which were secured by liens on real and personal property of the Debtor, including by deeds of trust on the Debtor's Jacksonville Property and New Bern Property. BB&T timely filed three proofs of claim in the case, all of which included amounts for prepetition attorneys' fees pursuant to N.C. Gen. Stat. § 6-21.2 (Claims Nos. 3-1, 4-1, and 5-1).

From the outset of the case, BB&T was the Debtor's largest creditor. The Bankruptcy Administrator filed a Motion to Direct Parties to Mediation on July 13, 2016 (D.E. 120; the "BA's Motion"), in which she requested the Debtor and BB&T participate in mediation to resolve the treatment of BB&T's claims under a proposed plan. The court granted the BA's Motion in an order entered on July 29, 2016 (D.E. 130). The Debtor filed a Motion for Valuation on September 28, 2016 (D.E. 148; the "Valuation Motion"), in which it asked the court to value the Jacksonville Property and New Bern Property to establish the amount of BB&T's secured claim for chapter 11 plan purposes.

The parties participated in a mediated settlement conference on September 13, 2016 and October 5, 2016, which resulted in a full resolution of all outstanding issues. The parties completed a Mediated Settlement Agreement (the "Settlement Agreement") at the conclusion of the

2

settlement conference, which required the Debtor to execute replacement notes for both the Jacksonville Property and New Bern Property, to be secured by deeds of trusts on each respective piece of property (the "Notes"). The Settlement Agreement also required the Debtor to sell the New Bern Property within a finite time following confirmation, failing which the Debtor would be required to auction the New Bern Property instead. The replacement Notes were to significantly reduce the amounts of BB&T's secured claims by reducing the Notes' principal amounts. Based on its belief that the Settlement Terms definitively established the value of BB&T's collateral, the Debtor withdrew its Motion for Valuation on October 13, 2016. The terms of the Settlement Agreement were incorporated into the Debtor's proposed chapter 11 plan of reorganization, which was filed by the Debtor on November 4, 2016 (the "Plan"). Class 5 of the Plan explains the treatment of BB&T's claims, mirrors the terms of the Settlement Agreement, and references the Settlement Agreement directly.

Specifically, the Plan provided that BB&T's secured claim was to be allocated between the two Notes pursuant to the terms of the Settlement Agreement. The Plan required the Debtor to execute a modified note in the principal amount of $1,500,000, to be secured by the Jacksonville Property, its fixtures, and the Debtor's personal property maintained at the Jacksonville Property. The Debtor was also to execute an additional modified note in an amount filed under seal,[1] which was to be secured by a deed of trust on the Debtor's New Bern Property. The Plan also provided that BB&T was not entitled to an unsecured claim in the case.

---

[1] The Debtor filed a Motion to Seal Document on October 12, 2016 (D.E. 156; the "Motion to Seal"). The Motion to Seal sought to seal the terms of the treatment of BB&T's claim secured by the New Bern Property in anticipation of a sale of the New Bern Property. The amount of BB&T's remaining lien on the New Bern Property, the allocation of any potential sales proceeds with respect to BB&T's lien, and the applicable marketing period of the New Bern Property were sealed in an order entered on October 24, 2016 (D.E. 163).

Therefore, BB&T's *entire* claim was allowed in the Plan and deemed secured pursuant to terms specifically agreed upon at mediation. BB&T cast an accepting ballot on December 30, 2016. The Debtor relied upon the Settlement Agreement in final changes promulgated to the Plan, with the specific blessing of BB&T, set out in the Plan's order of confirmation entered January 25, 2017. The Debtor timely executed the Notes as required under the Settlement Agreement and in accordance with the Plan on April 3, 2017.

Following confirmation, BB&T filed its Application. In it, BB&T asserts the right to recover postpetition attorneys' fees and reimbursement of expenses and costs directly from the Debtor pursuant to 11 U.S.C. § 506(b) on the basis that its claims were oversecured by the value of its collateral as of the petition date and at all times throughout the case. BB&T also maintains that recovery of postpetition fees, costs, and expenses is a right under the Bankruptcy Code pursuant to 11 U.S.C. § 506(b) and cannot be waived. In its Objection, the Debtor asserts that it is not obligated to pay BB&T's post-petition fees, regardless of whether BB&T was oversecured or undersecured during the pendency of the case, as the Settlement Agreement and confirmed Plan do not contemplate such fees or reimbursement of expenses.

## DISCUSSION

The issue is whether BB&T is entitled to recover postpetition interest, fees, and costs pursuant to 11 U.S.C. § 506(b) under the terms of the Settlement Agreement, as incorporated in the confirmed Plan. Section 506(b) ordinarily allows an oversecured creditor to recover postpetition interest, fees, and costs as part of its allowed secured claim to the extent it is oversecured, as provided under state law or the claim's underlying agreement. 11 U.S.C. § 506(b). Section 506(b) specifically provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

*Id.*

A confirmed chapter 11 plan of reorganization effectively operates as a binding contract between a debtor and its creditors, regardless of whether a creditor votes to accept or reject said plan. 11 U.S.C. § 1141(a); *see also In re St. Louis Freight Lines, Inc.*, 45 B.R. 546, 552 (Bankr. E.D. Mich. 1984) (finding that "a party in interest . . . is bound by the terms of the plan when confirmed, even if the plan ultimately provides it with less than that to which it is legally entitled"). A confirmed chapter 11 plan may be modified following confirmation only by the plan's proponent or the debtor. 11 U.S.C. § 1127(a).

In this case, BB&T's rights to recover fees and costs pursuant to 11 U.S.C. § 506(b) were modified by the Settlement Agreement, Notes, and terms of the confirmed Plan. The Settlement Agreement and confirmed Plan contain no provisions regarding postpetition fees, costs, or expenses. The parties consented to and entered the Settlement Agreement, and the court will enforce it accordingly. The terms of the Settlement Agreement were incorporated into the Debtor's Plan, and BB&T cast an accepting ballot for the Plan and the treatment of its claims. BB&T cannot now unilaterally add terms to the Settlement Agreement or seek to alter its treatment under the confirmed Plan to the detriment of the Debtor and other parties in interest. BB&T's status as oversecured or undersecured is immaterial. The court need not consider the extent of BB&T's alleged oversecurity or the value of its collateral, as it effectively waived its rights to recover any fees or costs under 11 U.S.C. § 506(b) in consenting to the terms of the Settlement Agreement as written and then as confirmed by the court with BB&T's consent in the plan confirmation order.

The relief sought by BB&T goes to a broader point, in that the purpose of mediation is to resolve a dispute by voluntary agreement reached between parties *with finality*. In the bankruptcy context, mediation to determine the status and amount of a given creditor's claim is critical to the formulation of a chapter 11 plan of reorganization. Here, BB&T knowingly reduced the amount of its secured claim and consented to plan treatment as a result of an arms-length mediation between sophisticated parties. The omission of an explicit provision in the Settlement Agreement or Plan regarding postpetition interest, costs, and fees may or may not have been an oversight on BB&T's part, but the resulting written Settlement Agreement, as incorporated into the Plan, is binding on all parties. The court will not modify or alter the bargained-for Settlement Agreement as such a modification would directly contravene the overarching purpose of mediation. Buyer's remorse will not be permitted. If a court could later override or rewrite agreed-upon settlement terms, consensual settlements would be rendered meaningless going forward. As a result, the parties are bound by the terms of the Settlement Agreement and confirmed Plan, which do not provide for recovery of any postpetition fees or costs by BB&T. Instead, the Settlement Agreement and terms of the confirmed Plan cap the Debtor's total obligation to BB&T.

## CONCLUSION

Based on the foregoing and as stated at the hearing, the Application is DISALLOWED. The parties are bound by the terms of the Settlement Agreement and confirmed Plan, and BB&T is not entitled to recover any postpetition fees or costs pursuant to 11 U.S.C. § 506(b). The Debtor is obligated to BB&T as outlined in the Plan.

### END OF DOCUMENT